UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRED ENGLISH,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 11-cv-146-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Fred English's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government responded to the motion (Doc. 7), and English replied to that response (Docs. 11 & 12). The Court notes that English had asked for additional time to reply to the Government's response (Doc. 9). The Court will grant that motion and will deem English's reply timely.

**I.  Background**

In or around 2005, English was convicted of a felony in an Illinois court. Following his term of incarceration, he served a term of mandatory supervised release ("MSR") as a part of his sentence for the offense. One of the terms of his MSR agreement provided: "You shall consent to a search of your person, property, or residence under your control." *See* 730 ILCS 5/3-3-7(a)(10). In January 2010, while English was on MSR, English's parole officer David Taylor wanted to interview English about the possible location of three escaped prisoners with whom English had been housed at some point before their escape.

According to English's affidavit attached to his reply brief, on January 6, 2010, Deputy United States Marshals Clark Meadows and Jim Robertson located English at a gas station and stopped, searched and handcuffed him and then placed him in the vehicle of Illinois parole

officer Upchurch. Upchurch told English he was going to conduct a parole compliance check, and the officers took English to his sister's home, where he was living. Finding the residence unlocked, Upchurch and the deputy marshals entered the home without English's or his sister's permission or a warrant and searched the home.

According to Meadows' report of the incident, after identifying English at the gas station, the deputy marshals called Upchurch to tell him they had located English. Upchurch arrived at the gas station, placed English in handcuffs and told him he was going to conduct a parole compliance check of his home. After arriving at English's sister's house, English consented orally to a search of his bedroom.

The search of English's bedroom yielded marihuana, a loaded firearm and ammunition, all of which English admitted belonged to him. A later search yielded a semi-automatic rifle. On January 12, 2010, English was arrested for unlawful possession of a firearm by a felon based on possession of the two firearms and the ammunition. In an interview that day, he again admitted to possessing the firearms, ammunition and marihuana.

On January 21, 2010, English was indicted on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). On March 11, 2010, English pled guilty to the charge, and on June 24, 2010, the Court sentenced English to serve 120 months in prison. English did not appeal to the Seventh Circuit Court of Appeals.

English signed and mailed this timely § 2255 motion on February 23, 2011. In the motion, he argues that his counsel was constitutionally ineffective in violation of his Sixth Amendment right to effective assistance of counsel because she failed to file a motion to suppress based on (1) the stop at a gas station and (2) the search of his home.

The Government argues that English has not shown that he would not have pled guilty

had a motion to suppress been filed or that counsel was deficient for failing to file such a motion.

## II.     § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal. A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816.

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro*, 538 U.S. at 504-05; *Fountain*, 211 F.3d 433-34. In addition, the district court before which the original criminal proceedings occurred, not an appellate court, is in the best position to initially make the

3

determination about the effectiveness of counsel in a particular proceeding and potential prejudice that stemmed from counsel's performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

**III.    Analysis**

English asserts that he was deprived of the assistance of counsel guaranteed by the Sixth Amendment. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1925 (2010); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the

4

trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

Where a defendant has pled guilty to a charge, to establish prejudice he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony is not enough. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").

A. <u>Failure to Seek Suppression Based on Search and Seizure of Person</u>

English believes his counsel was constitutionally ineffective for failing to file a motion to suppress based on his frisking, handcuffing and detention at the gas station without reasonable suspicion in violation of the Fourth Amendment as explained in *Terry v. Ohio*, 392 U.S. 1 (1968).

English has not satisfied either element of the *Strickland* test with respect to this incident. He has not alleged any prejudice from counsel's failure to challenge the search and seizure of his person. A motion to suppress invokes the exclusionary rule in an attempt to prevent evidence obtained in an illegal search from being admitted against a defendant. *See Weeks v. United States*, 232 U.S. 383 (1914) (applying rule in federal courts); *Mapp v. Ohio*, 367 U.S. 643 (1961) (applying rule in state courts). However, no evidence was obtained from the search and seizure of English's person at the gas station. Filing a motion to suppress based on the incident at the gas station would have been pointless and would not have had a reasonable chance of changing the result of the proceeding since there was no evidence to suppress. Where no additional evidence would have been suppressed, English would have been in exactly the same position he was when he decided to plead guilty. Thus, there is no reasonable probability that, had his counsel sought to suppress evidence from the search and seizure of English's person, English would not have entered a guilty plea and instead would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).[1]

Additionally, English's counsel was not deficient for failing to file a motion to suppress non-existent evidence. "It is not ineffective assistance for counsel to not file a meritless motion." *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990).

For these reasons, the Court finds counsel was not constitutionally ineffective for failing to file a motion to suppress based on the search and seizure of English's person.

---

[1] English makes passing reference to his plea being "forced." However, English has not supported this allegation with any argument or evidence. Furthermore, in light of the thorough plea colloquy in which English assured the Court under oath that he was making a knowing and voluntary plea not induced by any threats or promises, the Court finds any such argument without merit.

B.      Failure to Seek Suppression Based on Search of Residence

English also believes his counsel was constitutionally ineffective for failing to file a motion to suppress the evidence obtained in the search of his residence without reasonable suspicion that English was violating the terms of his MSR. The Government argues that English cannot establish prejudice because (1) the terms of his MSR agreement enabled a probation officer to search his home without reasonable suspicion and (2) English's January 12, 2010, admission that he possessed firearms would have been admissible against him regardless of the legality of the January 6, 2010, search, so suppression of the fruits of the residence search would not have had a reasonable probability of changing the calculus in his decision to plead guilty.

Again, English has not made a sufficient showing of either prong of the *Strickland* test. English has not shown prejudice because the motion he believes his counsel should have filed was unlikely to succeed in obtaining suppression of the evidence found in his residence in light of the terms of his MSR agreement substantially diminishing his expectation of privacy.

The Supreme Court addressed the applicable standards for the search of a probationer's home in *United States v. Knights*, 534 U.S. 112 (2001). There the Court acknowledged that the search of a residence ordinarily must be justified by probable cause to believe that contraband or evidence of a crime will be found. *See id.* at 121. However, it held that a lesser degree of suspicion is sufficient to justify the search of the home of a probationer who is subject to a search condition as a term of his probation. *Id.* In *Knights*, a probationer had agreed as a condition of his probation that he would "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114 (internal quotations omitted). In deciding whether a search of the probationer's residence satisfied the

7

Fourth Amendment's reasonableness requirement, the Supreme Court found that probationers have a significantly diminished expectation of privacy, and the government has a greater interest in monitoring them than it does in monitoring an ordinary citizen. *Id.* at 119-121. Therefore, probable cause was not necessary, and reasonable suspicion was sufficient to justify a search. *Id.* The *Knights* Court left open the question whether, in the absence of reasonable suspicion, a defendant's waiver of his Fourth Amendment rights as a condition of probation could justify a search either by sufficiently reducing his expectation of privacy or by constituting consent to the search. *Id.* at 120 n. 6.

The Seventh Circuit Court of Appeals answered this question in the affirmative in *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005). In that case, a probationer agreed as a condition of probation to "submit to searches of [his] person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in Court proceedings." *Id.* at 691 (internal quotations omitted). The Court of Appeals held that, by agreeing to the condition of probation, the probationer knowingly and intelligently waived his expectation of privacy such that a search of his residence without reasonable suspicion satisfied the Fourth Amendment's reasonableness requirement. *Id.* at 691. The Court of Appeals enforced the probationer's waiver to affirm the District Court's denial of a motion to suppress the fruits of the search. *Id.* at 691-92.

Similarly, in *United States v. Hagenow*, 423 F.3d 638 (7th Cir. 2005), the defendant had agreed as a condition of probation to the following: "You shall waive any and all rights as to search and seizure during your period of probation, and submit to search of your person or property by any police officer if a search is requested by a probation officer of this court." *Id.* at 641. The Court of Appeals held that this blanket waiver foreclosed an attempt to suppress

8

evidence recovered during a search of the defendant's home while he was on probation, regardless of reasonable suspicion. *Id.* at 643. *See also People v. Wilson*, 885 N.E.2d 1033 (Ill. 2008) (reasonable suspicion not required to search bedroom of parolee who agreed to substantially similar condition of release as English).

In this case, English agreed to the following term: "You shall consent to a search of your person, property, or residence under your control." English has not provided any reason why, in light of *Barnett*, *Hagenow* and *Wilson*, this provision of his MSR agreement did not effectively waive his expectation of privacy in any part of his residence under his control and render the search reasonable under the Fourth Amendment. Thus, he has not shown that any motion to suppress the evidence located in his bedroom would have merit.

English believes his counsel should have argued that the term of his MSR agreement in which he agreed to consent to a search was unclear and should not be enforceable. However, the Court has reviewed the language in English's MSR agreement and believes, as the Illinois Supreme Court found in *Wilson*, 885 N.E.2d at 1042, that the language is clear and explicit. English has not specified what argument should have been made to convince the Court otherwise.

In his reply brief, English also states that his counsel should have argued that the MSR agreement only authorized Taylor, his probation officer, not Upchurch or any other law enforcement officer, to search his residence. English has waived this argument because he raised it for the first time in his reply brief, to which the Government had no opportunity to respond. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998). Even were the Court to consider the argument, it would reject it. Nothing in the MSR agreement explicitly limits it to one particular probation

officer, and English has not specified what argument his counsel should have made to convince the Court of his view.

For these reasons, the Court finds that counsel's filing a motion to suppress would have had no reasonable probability of changing the status of the evidence when English decided to plead guilty to the charge. Therefore, there is no logical reason to believe – and English has offered no objective evidence – that his decision would have been any different had a motion to suppress been filed. For these reasons, too, counsel was not deficient for failing to file a meritless motion.

Finally, even if the firearms located in the search of English's home on January 6, 2010, had been subject to suppression, English has not provided any evidence or argument that his subsequent confession on January 12, 2010, was subject to suppression as tainted by prior unlawful events. *See Brown v. Illinois*, 422 U.S. 590, 602 (1975). English's January 12, 2010, confession would have been damning, and English has provided no objective evidence that, faced with that confession but not the fruits of the January 6, 2010, search, he would not have pled guilty to the charge and would have gone to trial. Additionally, counsel was simply not deficient for assessing the totality of the evidence against English and declining to seek suppression of one category while another equally prejudicial category stood against him.

For the foregoing reasons, the Court finds counsel was not constitutionally ineffective for failing to file a motion to suppress evidence from the search of English's residence.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner. A § 2255 petitioner may not proceed

on appeal without a certificate of appealability. 28 U.S.C. § 2253(c)(1); *see Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004)*; Ouska*, 246 F.3d at 1045. To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

The Court finds that English has not made such a showing and, accordingly, will decline to issue a certificate of appealability.

**V.     Conclusion**

For the foregoing reasons, the Court:

•     **GRANTS** English's motion for additional time to reply to the Government's response (Doc. 9) and deems his reply timely;

•     **DENIES** English's § 2255 motion (Doc. 1);

•     **DECLINES** to issue a certificate of appealability; and

•     **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  January 9, 2012**

                 s/ J. Phil Gilbert
                 **J. PHIL GILBERT**
                 **DISTRICT JUDGE**